UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LARRY SIMS, JR. et al.,

                    Plaintiffs,                    Case No. 1:12-cv-28

v.                                        Honorable Janet T. Neff

BERRIEN COUNTY SHERIFF
DEPARTMENT et al.,

                    Defendants.
_____/

## <u>OPINION</u>

        This is a civil rights action initially brought by a state prisoner and five non-prisoner *pro se* litigants, purportedly pursuant to 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, and 1994. The Court has granted Plaintiff Larry Sims, Jr. leave to proceed *in forma pauperis* (docket #4) but has dismissed the remaining Plaintiffs for lack of prosecution (docket #15). Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff Sims' *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept his allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff Sims' complaint on grounds of immunity or for failure to state a claim against Defendants Berrien County Sheriff Department, Bailey, Haskins, Larsch, Boyce, Cotter, O'Malley, Taylor, Mark Sanford, White, Scott

Sanford, Wiley, unknown prosecutors, unknown public defenders, and unknown district judges. The Court will serve the complaint against Defendants Biggart, Hopkins, Johnson, Yech, and Babcock.

**Discussion**

I.  Factual allegations

Plaintiff Larry Sims, Jr. is an African-American man living in Benton Harbor, Michigan. He sues the Berrien County Sheriff Department (BCSD) and the following BCSD employees: Sheriff L. Paul Bailey; Narcotics Unit Deputies J. Biggart, unknown Hopkins, unknown Johnson, unknown Yech, unknown Babcock, unknown Haskins, unknown Larsch, unknown Boyce and other unknown deputies. He also sues the following individuals: Berrien County Prosecutor Arthur J. Cotter; Assistant Prosecutors Cortney O'Malley, Jeffrey B. Taylor, Mark Sanford, and other unknown prosecutors; Berrien County Public Defenders Earnest White, Scott Sanford and other unknown public defenders; Berrien District Judge Dennis M. Wiley and other unknown district judges.

According to the complaint, on August 17, 2011, members of the Berrien County Narcotics Unit broke down the door at 790 Edgecumbe Avenue, the residence of Plaintiff and Linda Williams. Plaintiff had been painting and cleaning most of the day. He was in the bathtub and Williams was using the toilet when masked agents carrying automatic weapons burst into the bathroom. Williams was allowed to pull her pants up at gunpoint. She was then handcuffed and taken from the bathroom. Plaintiff was escorted into the adjoining bedroom and permitted to put on pants and a shirt. He then was handcuffed and taken into the dining room, where Williams also was seated. Plaintiff was then informed for the first time that the intruders were agents from the

Berrien County Narcotics Unit. The officers did not knock or announce their presence before they kicked in the door and stormed the house.

Plaintiff and Williams were kept in the dining room while officers and a trained canine searched their home, yard and basement. Williams was then taken into a rear room of the house and interrogated by a masked officer identified as either Defendant Biggart or Defendant Yech. She allegedly was told that she would have to make at least a couple of drug buys and admit that Eric Williams was a resident of the home if she wanted to avoid arrest on felony charges for what was found in the home. During this time, Plaintiff was held in the dining room by another masked officer, possibly Biggart or Yech. After Williams was brought back to the dining room crying, Plaintiff was taken into the back room, where he was interrogated, intimidated and pressured by a masked officer. The officer identified himself as "Officer Johnson," but Plaintiff asserts that the officer was either Biggart or Yech. (Compl. ¶ 15, docket #1, Page ID#8.) Plaintiff was asked if Eric Williams lived in the basement. Plaintiff told the officer that his nephew, Doneal Wright, resided in the basement and that Eric Williams lived with his girlfriend's mother.

Plaintiff admitted that he at times used marijuana for pain control and was seeking a Michigan medical marijuana permit. Plaintiff was asked about his sources for marijuana, and he told the officer that he occasionally had purchased a small amount when he was approached on the street. He did not know names or addresses of those individuals from whom he made such purchases. The officer told Plaintiff that his weed pipe and some blunt roaches had been found in the search. The officer promised not to charge Plaintiff if he made some controlled buys of at least one pound. (*Id.* ¶ 18.) Plaintiff told the officer that he did not know where to make such a buy, as he only bought "nick-bags ($5 bags)" as he found them offered.

One of the female agents took Plaintiff's personal legal pad and wrote Plaintiff's identifying information on it.  She then held the pad against Plaintiff's chest and photographed him.  Williams was photographed the same way.  Officers then took pictures throughout the house and kept Plaintiff's legal pad.  After all of their property had been searched and thrown about, the officers removed Plaintiff's and Williams' handcuffs and threw two pages of paper on the table saying, "Here's your warrant!"  (*Id.* ¶ 21.)  Shortly thereafter, Eric Williams was arrested as he approached the house.

The forced entry into the home caused damage to the walls, doors and door frame, preventing Plaintiff from securing his home because of the cost of repairs.  Plaintiff admits that he and his nephew are users of the marijuana and drug paraphernalia found in the home, with the exception of certain marked money that was not listed in the original tabulation of items taken from the home.  Plaintiff complains that the Berrien County Narcotics Unit engages in a scheme of self-enrichment by exploitation of the forfeiture provisions of MICH. COMP. LAWS § 333.7521.  He also alleges that warrants are issued on the basis of "terrified involuntary servants (slaves) whom [sic] are attempting to stay out of jail – for what are often petty offenses . . . ."  (*Id.* ¶ 34.)  Plaintiff attempted to obtain a copy of the affidavit in support of the search warrant, but he was denied.

On August 30 and September 1, 2011, Plaintiff attended a criminal proceeding involving Eric Williams.  Plaintiff told Deputy Biggart that he was in court to correct facts that had been misstated to the media, including allegations that ten people, some of whom had outstanding warrants or possessed drugs, were at his home.  Plaintiff told Biggart that his home was not a place where illegal drugs were sold.  Shortly before Plaintiff was to take the stand, he overheard Defendant Biggart tell the prosecutor that both Plaintiff and Linda Williams had admitted that Eric

Williams lived in the basement of their home, a statement that Plaintiff alleges was patently false. Plaintiff alleges that Defendants O'Malley, Cotter, Taylor and Sanford were aware of the unsupported claims and did not prevent the unreasonable search of Plaintiff's property or the unlawful forfeiture of personal property, specifically, Plaintiff's yellow notepad.

On September 1, 2011, allegedly in retaliation for Plaintiff's testimony in support of Eric Williams, Defendants Biggart, Hopkins, Babcock and Yech kicked in the front door of Plaintiff's mother's home at 179 Garfield. The officers demanded to know where Plaintiff slept and interrogated Plaintiff's mother and sisters. The agents took a variety of property belonging to Plaintiff's family members. Thereafter, on November 29, 2011, when Plaintiff appeared in the corridor outside Eric Williams' trial, he was arrested by an unknown deputy on a newly issued warrant charging him with possession of marijuana. The following day, Plaintiff was advised by public defender Earnest White to invoke the Fifth Amendment when he was called to testify at Eric Williams' trial. Plaintiff alleges that public defenders White and Sanford failed to protect his rights, in violation of the Equal Protection and Due Process Clauses.

At Plaintiff's arraignment, Judge Wiley advised Plaintiff that he had appointed defender White to advise Plaintiff about the dangers of taking the stand, specifically noting that the court would consider higher felony charges if the testimony supported it. When Plaintiff told Wiley that he would not invoke the Fifth Amendment, Wiley arraigned Plaintiff on the possession charge and set an allegedly unreasonable bond of $3,000.00. Plaintiff alleges that Wiley and an unknown magistrate signed warrants without reasonable diligence, conspired to assist the narcotics unit in its unlawful forfeiture operations, overlooked doctored documents and witness testimony, and denied Plaintiff a fair hearing. Plaintiff also alleges that the Berrien County Prosecutor's Office has

conspired with the narcotics unit to engage in unlawful forfeiture and to suspend or delay prosecution for the possession charge in order to induce Plaintiff to give false testimony or serve as a confidential informant.

Plaintiff alleges that the search warrant for 790 Edgecumbe did not include that the confidential informant made a controlled purchase for $20.00 in marijuana using recorded bills. Moreover, before being altered at a later date, the search inventory report did not list marked money or specify the type of currency recovered. Plaintiff complains that the search warrant was a standard template used to support routine searches, all of which allegedly were based on the existence of multiple and independent controlled buys, in violation of the Fourth Amendment. Plaintiff contends that, because of their racial biases against African-American males, Defendants conspired with the Berrien County District Court to overlook altered search inventory sheets and tabulations, in violation of the First, Fourth, Fifth, Eighth, Ninth, Thirteenth and Fourteenth Amendments, the Michigan Constitution, and multiple Michigan statutes.

For relief, Plaintiff seeks a permanent injunction barring Defendants from altering search tabulations, tampering with witnesses, deploying assault units to harass and coerce Plaintiff and others, and engaging in harassment and discrimination on the basis of race, gender and "Provincial location." (Compl., Page ID#33.) In addition, Plaintiff seeks compensatory and punitive damages.

I.    Immunity

Plaintiff sues Arthur J. Cotter, Cortney O'Malley, Jeffrey B. Taylor, Mark Sanford, and unknown other prosecutors for their actions taken in prosecuting him, ostensibly in retaliation for testifying at Eric Williams' trial and as part of an illegal scheme to generate income from

forfeitures.  Defendant prosecutors are entitled to absolute immunity for their actions in prosecuting the criminal action against Plaintiff.  The Supreme Court embraces a functional approach to determining whether a prosecutor is entitled to absolute immunity.  *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Forrester v. White*, 484 U.S. 219, 229 (1988); *accord Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010); *Lomaz v. Hennosy*, 151 F.3d 493, 497 (6th Cir. 1998).  Under a functional analysis, a prosecutor is absolutely immune when performing the traditional functions of an advocate.  *Kalina*, 522 U.S. at 130;  *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003); *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989).  The Supreme Court has held that a prosecutor is absolutely immune for the initiation and pursuit of a criminal prosecution.  *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Lomaz*, 151 F.3d at 497.  Acts which occur in the course of the prosecutor's role as advocate are entitled to protection of absolute immunity in contrast to investigatory or administrative functions that are normally performed by a detective or police officer.  *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 276-78 (1993); *Grant*, 870 F.2d at 1137.  In the Sixth Circuit, the focus of the inquiry is how closely related the prosecutor's conduct is to his role as an advocate intimately associated with the judicial phase of the criminal process.  *Spurlock*, 330 F.3d at 797; *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997).  Obviously, charging Plaintiff with the offense of possessing marijuana is part of the prosecutor's role as an advocate.  Accordingly, prosecutors Cotter, O'Malley, Taylor, Mark Sanford and the unknown prosecutor are entitled to immunity for that action.

Plaintiff also sues Berrien County District Judge Dennis Wiley and other unknown district judges.  Generally, a judge is absolutely immune from a suit for monetary damages.  *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) ("[I]t is a general principle of the highest importance to the proper

administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.") (internal quotations omitted); *Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Absolute judicial immunity may be overcome in only two instances. First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity. *Mireles*, 502 U.S. at 11. Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction. *Id.* at 12.

Plaintiff's allegations clearly fail to implicate either of the exceptions to judicial immunity. There is no doubt that presiding over the trial of Eric Williams, providing Plaintiff with an attorney before he testified at Williams' trial, and arraigning Plaintiff on the charge of possessing marijuana were all judicial acts, and Judge Wiley unquestionably was acting within his jurisdiction in taking those actions. Accordingly, Judge Wiley is absolutely immune from liability. Because Judge Wiley is clearly immune from liability in this case, Plaintiff may not maintain an action for monetary damages against him. 28 U.S.C. § 1915(e)(2)(B)(iii).

To the extent that Plaintiff names unknown judges, he makes no specific allegations, except to assert that the Berrien County District Court routinely overlooked evidence tampering. Plaintiff lacks standing to assert the constitutional rights of other individuals for violations in other criminal prosecutions. *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). As a layman, Plaintiff may only represent himself with respect to his individual claims, and may not act on behalf of others. *See O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973); *Lutz v. LaVelle*, 809 F. Supp. 323, 325 (M.D. Pa. 1991); *Snead v. Kirkland*, 462 F. Supp. 914, 918 (E.D. Pa. 1978). Moreover, to the extent that a judge may

-8-

be said to "overlook" deficiencies in evidence, he would do so only within the context of deciding legal issues during a criminal prosecution. Accordingly, such judges also would be entitled to judicial immunity.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

-9-

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Conspiracy

Plaintiff alleges the existence of an extensive conspiracy between narcotics unit deputies, prosecutors, judges, and defense attorneys designed to draft, sign and execute search warrants targeting minority citizens in order to further a massive forfeiture scheme. To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3

(6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. Michigan,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995).

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe the execution of two search warrants on properties with which Plaintiff was associated. Although some of the Defendants had a part in the issuance and execution of a search warrant on Plaintiff's properties, he makes no factual allegations that would demonstrate any agreement between them. He also fails entirely to allege any fact supporting a pattern of conduct. For both reasons, Plaintiff's allegations of conspiracy must be dismissed as conclusory.

### B.    Berrien County Sheriff Department

The Berrien County Sheriff Department does not exist as a separate legal entity; it is simply an agent of the county. *Vine v. County of Ingham*, 884 F. Supp. 1153, 1158 (W.D. Mich. 1995) (citing *Hughson v. County of Antrim*, 707 F. Supp. 304, 306 (W.D. Mich. 1988) and *Bayer v. Almstadt*, 185 N.W.2d 40, 44 (Mich. Ct. App. 1970)). However, construing Plaintiff's *pro se* complaint with all required liberality, *Haines*, 404 U.S. at 520, the Court assumes that Plaintiff intended to sue Berrien County. Berrien County may not be held vicariously liable for the actions of its employees under § 1983. *See Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, a county is liable only when its official policy or custom causes the injury. *Id.*

Plaintiff's allegations essentially rest on a theory of vicarious liability and therefore do not state a claim. *Id.* To the extent that Plaintiff intends to suggest that the county had a custom of unlawfully issuing and executing search warrants, his allegations are wholly conclusory. As the Supreme Court has instructed, to demonstrate that a municipality had an unlawful custom, a plaintiff must show that the municipality was deliberately indifferent to "practices so persistent and widespread as to practically have the force of law." *Connick*, 131 S. Ct. at 1359. Plaintiff cites no specific prior incidents demonstrating a widespread pattern. He merely states that such a pattern exists. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 555. Plaintiff therefore fails to state a claim against Berrien County. Accordingly, the Court will dismiss the Berrien County Sheriff Department and Berrien County.

### C. Defendants Bailey, Haskins, Larsch and Boyce

Plaintiff fails to make specific factual allegations against Defendant Sheriff Bailey, other than his claim in Counts II and III that Bailey is responsible for the actions of his deputies. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions,

-12-

has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendant Bailey engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against him.

In addition, it is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974). Plaintiff fails to even to mention Defendants Haskins, Larsch and Boyce in the body of his complaint; he simply includes their names in the conclusory legal paragraph setting out Count V of his complaint, where they are listed as part of the group of officers, including Defendants Biggart, Hopkins, Johnson, Yech and Babcock, whom he holds collectively responsible for the preparation of the warrant. His allegations fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a

-13-

short and plain statement of the claim showing that the pleader is entitled to relief"). Accordingly, the complaint fails to state a claim against Defendants Haskins, Larsch, and Boyce.

### D. Defendants White, Scott Sanford and Unknown Defenders

Plaintiff alleges that public defenders Ernest White, Scott Sanford and unknown other defenders failed to adequately represent Plaintiff and other defendants.[1] Plaintiff cannot show that his court-appointed defense counsel acted under color of state law. In *Polk County v. Dodson*, 454 U.S. 312 (1981), the Supreme Court held that defense counsel performs a private, not an official, function:

> In our system a defense lawyer characteristically opposes the designated representatives of the State. The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness. But it posits that a defense lawyer best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing "the undivided interest of his client." This is essentially a private function, traditionally filled by retained counsel, for which state office and authority are not needed.

454 U.S. at 318-19 (footnotes omitted). The *Polk County* Court further held that this is true even of the state-appointed and state-paid public defender. *Id.* at 321. The Court said that, once a lawyer undertakes the representation of an accused, the duties and obligations are the same whether the lawyer is privately retained, appointed, or serves in a legal aid or defender program. *Id.* at 323. The Court held that, even though a public defender is paid by the state, he or she does not act under color of state law in representing the accused. *Id.* at 325. Rather, defense counsel – whether privately retained or paid by the state – acts purely on behalf of the client and free from state control. *Id.* The Sixth Circuit has adhered to the holding in *Polk County* in numerous unpublished decisions. *See, e.g., Floyd v. Cnty. of Kent*, 454 F. App'x 493, 497 (6th Cir. 2012) (holding that, when performing

---

[1]As previously discussed, Plaintiff is limited to pursuing claims strictly on his own behalf, as he lacks standing to bring the claims of others. *See Newsom*, 888 F.2d at 381 (6th Cir. 1989).

traditional functions as counsel, a public defender is not a state actor); *Powers v. Hamilton Cnty. Pub. Defender*, 501 F.3d 592, 611 (6th Cir. 2007) (same); *Harmon v. Hamilton Cnty. Court of Common Pleas*, 83 F. App'x 766, 767 (6th Cir. 2003).  Accordingly, Plaintiff fails to state a § 1983 claim against Defendants White, Scott Sanford, and the unknown public defenders because they are not state actors.

### E.    Defendants Biggart, Hopkins, Johnson, Yech and Babcock

At this juncture, the Court concludes that Plaintiff has adequately alleged a claim against Defendants Biggart, Hopkins, Johnson, Yech, Babcock and unknown deputies based on the reasonableness of the search.[2]

### <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the following Defendants will be dismissed on grounds of immunity or for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c): Berrien County Sheriff Department, Bailey, Haskins, Larsch, Boyce, Cotter, O'Malley, Taylor, Mark Sanford, White, Scott Sanford, Wiley, unknown prosecutors, unknown public defenders, and unknown district judges.  The Court will serve the complaint against Defendants Biggart, Hopkins, Johnson, Yech, and Babcock.

---

[2]The Court is without sufficient information at this time to order service on the additional unknown deputies who participated in the search.

An Order consistent with this Opinion will be entered.


Dated: __May 24, 2012_____      __/s/ Janet T. Neff_____
                                      Janet T. Neff
                                      United States District Judge

-16-